IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VICKIE BROWN,
    *Plaintiff*,

v.

JACOBS TECHNOLOGY, INC., et al.
    *Defendants*.

Civil Action No. ELH-18-2516

**MEMORANDUM OPINION**

This case is rooted in events that occurred at the U.S. Army's Aberdeen Test Center ("Aberdeen"), where plaintiff Vickie Brown had worked for about twenty years. Brown has filed a retaliation action against her former employers, Jacobs Technology, Inc., d/b/a Jacobs Engineering, Inc. ("Jacobs") and Caelum Research Corp. ("Caelum"), who were contractors at Aberdeen.

This suit, as amended, is filed under "Section 827 and/or section 828 of the 2013 National Defense Authorization Act ["NDAA"], 10 U.S.C. § 2409, *et seq.*" ECF 18 (the "Amended Complaint"). Section 2409 is known as the Defense Contractor Whistleblower Protection Act (the "Act" or "DCWPA"). *See Brach v. Conflict Kinetics Corp.*, 221 F. Supp. 3d 743, 744 (E.D. Va. 2016).[1]

---

[1] The NDAA, Pub. L. No. 112–239, 126 Stat. 1632 (2013), was subsequently amended by Pub. L. No. 114–261, 130 Stat. 1362 (2016).

Plaintiff states that Sections 827 and 828 of the NDAA are codified at 10 U.S.C. § 2409. *See* ECF 18 at 1. However, Section 828 is codified at 41 U.S.C. § 4712. Section 2409 of 10 U.S.C. "predates the NDAA as a component of the Armed Forces Title of the United States Code—Title 10." *Dimartino v. Seniorcare*, RDB-15-3788, 2016 WL 3541217, at *4 n.4 (D. Md. June 29, 2016). Although the NDAA amended § 2409, the NDAA "did not establish the section or its retaliation provisions." *Id.*; *see also Brach,* 221 F. Supp. at 746 n.3; *United States ex rel. Cody v. Mantech Int'l Corp.*, 207 F. Supp. 3d 610, 612 n.1 (E.D. Va. 2016).

Plaintiff alleges that defendants are contractors, as defined in 10 U.S.C. § 2409(a)(4). And, she contends that she was an employee of a contractor or subcontractor, as defined in § 2409(a). Further, Brown alleges that defendants subjected her to reprisal after she engaged in protected activity, in violation of § 2409(a)(1).

In particular, Brown worked as a multimedia technician at Aberdeen for Jacobs and several subcontractors, including Caelum. ECF 18, ¶¶ 7-9. She claims that she was demoted and then "forced to resign" on December 5, 2016, in retaliation for reporting to her supervisors at Jacobs and Caelum that two U.S. Army employees "improperly engaged in favoritism toward certain contractors by providing them more opportunities and training," in violation of Federal Acquisition Regulations ("FAR"). *Id.* ¶¶ 12, 22.

Defendants have jointly moved to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction. ECF 19. The motion is supported by a memorandum of law (ECF 19-1) (collectively, the "Motion") and several exhibits. ECF 19-2 - ECF 19-8. Defendants observe that plaintiff failed to file "a complaint alleging reprisal against Defendants with the Department of Defense Office of the Inspector General ('DoD OIG')," and instead filed her complaint with the Department of the Army. ECF 19-1 at 1. Therefore, they contend that plaintiff's claim is jurisdictionally barred, because she "has failed to exhaust her administrative remedies," in accordance with the Act, 10 U.S.C. § 2409. *Id.*

Brown opposes the Motion (ECF 22, "Opposition"), supported by three exhibits, collectively docketed at ECF 22-1. She points out that "she complained of retaliation" to the U.S. Army Office of Inspector General ("Army OIG") on November 10, 2016, and the "Army OIG substantiated Brown's claims of retaliation" on October 19, 2017. ECF 22 at 7. In Brown's view,

her "substantiated complaint of retaliation to the Army Inspector General served to exhaust her administrative remedies under the NDAA." *Id*. at 8. Defendants have replied. ECF 27 ("Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion (ECF 19).

## I. Factual Background[2]

Jacobs and Caelum "are contractors for the U.S. Army for services at the U.S. Army's Aberdeen Test Center." ECF 18, ¶ 7. Jacobs provides "technical, professional, and construction services," *id*. ¶ 4, and "is the prime contractor handling the substantive portion of services including day-to-day assignments, management, supervision, and direction to employees." *Id*. ¶ 7. In 2013, Caelum became a subcontractor to Jacobs, *id*. ¶ 8, "handling administrative personnel functions such as pay, benefits, and leave." *Id*. ¶ 7. Both entities have employees who work at Aberdeen. *Id*. ¶¶ 4, 5.

In or about 1996, Brown began "work[ing] in association with Jacobs but with different subcontractors" as a "Multi-media Technician IV." *Id*. ¶¶ 8, 9. Around July 2013, when "Caelum became the subcontractor" at Aberdeen, Caelum became Brown's employer and "paid Brown's compensation." *Id*. ¶ 8. However, "Jacobs and Army employees directed her day-to-day work." *Id*.

As a technician, Brown "mainly edited U.S. Army videos," for which she "held a security clearance, as she had to sometimes work on classified materials." *Id*. ¶ 9. In addition, she served in "a team leader position for approximately seven years." *Id*. ¶ 10. According to plaintiff,

---

[2] The factual allegations are derived from the Amended Complaint. Based on the procedural posture of the case, I must assume the truth of all well pleaded factual allegations. *See E.I. du Pont Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

3

defendants "consistently provided" her with "positive feedback about her performance and issued her hundreds of awards of recognition." ECF 18, ¶ 10.

During the course of Brown's employment, she "worked closely with two U.S. Army employees, Tech Media supervisor Rick Appel and Tech Imaging chief Mark Stern." *Id*. ¶ 11. In 2014 or 2015, Brown "reported" to managers at Jacobs and Caelum that Appel and Stern "improperly engaged in favoritism toward certain contractors by providing them more opportunities and training." *Id*. ¶ 12. Brown also reported to her managers that "Appel and Stern were directly managing Jacobs and Caelum contractors" and, according to the Amended Complaint, such behavior "is improper in light of their position as government employees and the terms of the contract with the government." *Id*. But, Brown claims that her "managers ignored her reports." *Id*.

Brown alleges that in January or February 2016, Appel provided "two Jacobs contractors, David Oldewurtel and Steve Lowther, information about two upcoming job openings with the U.S. Army . . . ." *Id*. ¶ 13. Appel then "reopened the position[s] multiple times to ensure that both Oldewurtel and Lowther were selected for the positions because the job descriptions were written specifically for them." *Id*.

According to plaintiff, beginning around July 2016, "Appel stopped communicating with Brown and refused to inform her about important decisions pertaining to work duties." *Id*. ¶ 14. Further, Appel "suggested that Brown should step down as team lead[er]." *Id*. In response, Brown complained to Jacobs employee Steven Tapp "that tensions with Appel were worsening." *Id*. However, "Tapp did not take any action based on Brown's complaint." *Id*.

On or about September 13, 2016, based on allegations from Appel and Stern, Tapp "issued Brown a written warning alleging that she did not follow instructions and delegated work to

others . . . ." ECF 18, ¶ 15. Notably, "[t]his was the first write-up Brown received in her almost twenty years working at the Aberdeen Test Center." *Id*.

Brown responded to the written warning on or about September 20, 2016, "stating that in years prior she repeatedly expressed her concern to her managers that Appel and Stern were interfering with Jacobs and Caelum employee[s] and that they showed favoritism toward certain contractors by providing them special training and information." *Id*. ¶ 16. In addition, Brown "reported that Appel and Stern's acts were in violation of the [FAR] policy and Jacobs's contract with the government." *Id*. And, "Brown also reported that she complained on several occasions with no success or resolution." *Id*. According to plaintiff, because of her complaints, "her good working relationship with Appel diminished." *Id*.

On or about September 26, 2016, defendants "placed Brown on a performance improvement plan ('PIP')." *Id*. ¶ 17. On November 2, 2016, Brown emailed Ed Pagano, Vice President of Jacobs, and told him that "'the PIP process is humiliating and degrading,' and that she 'was made to look like a disobedient child and was found guilty without a trial. [She] felt like [she] was being bullied . . . .'" *Id*. ¶ 18. Although Brown "successfully completed the PIP" in November 2016, defendants "notified Brown that she would be reassigned to another manager doing essentially administrative work." *Id*. ¶ 19. According to the Amended Complaint, such a "demotion of assignments could have resulted in a significant change in pay." *Id*.

Thereafter, on November 10, 2016, "Brown filed a complaint" with the Army OIG, "alleging that Appel and Stern were violating the FAR despite her complaints to Jacobs and Caelum management." *Id*. ¶ 20. Brown also "complained about retaliation she experienced" from another co-worker, Heather Passwater. *Id*. In the OIG complaint, Brown characterized her place of employment "as a 'hostile office environment' . . . ." *Id*.

5

In an email of November 28, 2016, Brown complained about retaliation to an investigator at Jacobs, stating that "she felt 'targeted and put through [the PIP] process unnecessarily.'" ECF 18, ¶ 21. Brown also said "that she believed Jacobs put her in a position . . . where she would not succeed" to justify the company's decision "when it ultimately terminated her." *Id*. In addition, she "complained of unfair treatment by Ross Burns and Tapp . . . ." *Id*. Brown asserts that on December 5, 2016, "faced with the impending demotion, [she] was forced to resign." *Id.* ¶ 22.

On February 1, 2017, Brown asked Inspector General Kenneth Avery about the status of the Army OIG investigation. *Id*. ¶ 23. Avery responded on March 13, 2017, indicating that "the OIG had finished [its] initial inquiry and would be requesting that Aberdeen Test Center appoint an Investigating officer to review Brown's allegations." *Id*.

Thereafter, by email on October 4, 2017, Brown again inquired of Avery about the status of the Army OIG investigation." *Id*. ¶ 24. Avery "told her that the investigation was complete and she should be receiving correspondence that week." *Id*. In addition, Avery stated that "the IG office was waiting [for] the Commander's approval of the investigative report." *Id*.

On November 1, 2017, "the Army OIG substantiated the allegations that Stern and Appeal [sic] improperly influenced the actions of contract employees in violation of FAR 37.104." *Id*. ¶ 25.

According to the Amended Complaint, more than 210 days have passed since Brown initially filed her complaint with the Army OIG. *Id*. ¶ 6. Therefore, plaintiff asserts that she has "successfully exhausted her administrative remedies." *Id*. This contention is at issue in the Motion.

Additional facts are included, *infra*.

## II. Discussion

### A.

Defendants have moved to dismiss the Amended Complaint solely under Fed. R. Civ. P. 12(b)(1), and solely on the ground that this Court lacks subject matter jurisdiction. ECF 19. They argue that this Court lacks subject matter jurisdiction because plaintiff failed properly to exhaust her administrative remedies, under the NDAA, 10 U.S.C. § 2409. In particular, defendants contend that plaintiff failed to file a complaint alleging reprisal with the proper entity—the Inspector General of the Department of Defense—as required under the DCWPA. ECF 19-1 at 1, 4. Instead, she filed her complaint with the Army's OIG. Plaintiff maintains that she adequately exhausted her remedies by filing a complaint with the Army OIG. ECF 22 at 6.

The Court has "an independent obligation" to verify that it has subject matter jurisdiction. *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). Indeed, a court may consider subject matter jurisdiction at any time in the litigation, and *sua sponte*. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

Both parties seem to assume, without discussion, that the administrative exhaustion requirement under the Act is a jurisdictional prescription. *See* ECF 19-1 at 1; ECF 22 at 5. They also articulate the standard of review under Rule 12(b)(1). *See* ECF 19-1 at 4; ECF 22 at 5.

As best this Court can determine, the Fourth Circuit has not yet decided whether the exhaustion requirement under the Act is jurisdictional. Moreover, to my knowledge, no district judge in this circuit has directly addressed whether the Act's exhaustion requirement is a

jurisdictional bar.³ I am not persuaded that Rule 12(b)(1) is implicated here. And, because the Motion is founded only on Rule 12(b)(1), I shall deny it.

**B.**

Generally, the term "jurisdictional" is "reserved for prescriptions delineating the classes of cases a court may entertain (subject-matter jurisdiction) and the persons over whom the court may exercise adjudicatory authority (personal jurisdiction)." *Fort Bend County v. Davis,* ___ U.S. ___, 139 S. Ct. 1843, 1848 (2019) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)). "Only if the statutory text 'plainly show[s] that Congress imbued a procedural bar with jurisdictional consequences' should a court treat a rule as jurisdictional." *Stewart v. Iancu*, 912 F.3d 693, 700 (4th Cir. 2019) (quoting *United States v. Kwai Fun Wong*, ___ U.S. ___, 135 S. Ct. 1625, 1632 (2015)) (alteration in *Stewart*). In other words, "Congress must explicitly 'tag' a procedural bar 'as jurisdictional.'" *Stewart*, 912 F.3d at 700.

The recent Supreme Court case of *Fort Bend County v. Davis*, 139 S. Ct. 1843, is informative. There, the Supreme Court considered the matter of exhaustion under Title VII of the Civil Rights Act of 1964, which, among other things, prohibits discrimination is employment on the basis of race, color, religion, sex, and national origin. 42 U.S.C. § 2000e-2(a)(1). Under Title VII, as a precondition to suit, a complainant must first file a charge with the Equal Employment Opportunity Commission ("EEOC") within the time specified following the alleged unlawful

---

³ In *Manion v. Spectrum Healthcare Resources*, 966 F. Supp. 2d 561, 565 n.1 (E.D.N.C. 2013), the defendant moved to dismiss the plaintiff's DCWPA claim pursuant to Fed. R. Civ. P. 12(b)(6), asserting that the "plaintiff's complaint d[id] not allege with sufficient particularity that he has exhausted his administrative remedies." The court recognized, without discussion, that the "plaintiff exhausted his administrative remedies as provided by the Act when he filed a complaint with the Inspector General of the Department of Defense and was later denied relief by the head of an executive agency." *Id.* at 565.

8

employment practice. *See* 42 U.S.C. §§ 2000e-5(b), 5(e)(1), 5(f)(1); *see also id*. § 2000e-5(c).[4] But, the *Davis* Court unanimously held that Title VII's exhaustion requirement is not a jurisdictional requirement. 139 S. Ct. at 1846, 1850. Rather, it is a "claim-processing rule[] that must be timely raised to come into play." *Id.* at 1846.

The Court explained that the term "jurisdictional" is "generally reserved to describe the classes of cases a court may entertain (subject-matter jurisdiction) or the persons over whom a court may exercise adjudicatory authority (personal jurisdiction)." *Id.* It noted that the charge-filing prerequisites to suit in Title VII do not "'refer in any way to the jurisdiction of the district courts[.]'" *Id.* at 1851 (citations omitted). Rather, such provisions "'speak to . . . procedural obligations.'" *Id.* (citation omitted).

Further, the *Davis* Court observed that courts "'have more than occasionally [mis]used the term jurisdictional' to refer to nonjurisdictional prescriptions." *Id.* at 1848 n.4 (quoting *Scarborough v. Principi*, 541 U.S. 401, 413 (2004) (internal quotation marks omitted)). And, in recent years, the Court has admonished the "'profligate use of the term.'" *Davis*, 139 S. Ct. at 1848 (quoting *Sebelius v. Auburn Regional Med. Ctr.*, 568 U.S. 145, 153 (2013)).

Similarly, the Fourth Circuit has cautioned: "Not all exhaustion requirements are jurisdictional." *Stewart*, 912 F.3d at 700 (finding that Title VII's 180-day waiting period, 42 U.S.C. § 2000e-16(c), is non-jurisdictional). Rather, "certain exhaustion requirements may be jurisdictional while others are not." *Id.*

---

[4] The Supreme Court cited a conflict among the courts of appeal as to whether Title VII's charge-filing requirement is jurisdictional. One of the two cases cited to illustrate the conflict is *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (concluding that federal courts lack subject matter jurisdiction "when the charge-filing requirement is not satisfied"). *See Davis*, 139 S. Ct. at 1848.

Characterizing a procedural rule as jurisdictional "alters the normal operation of [the] adversarial system." *Henderson*, 562 U.S. at 434 (holding that a statute requiring filing of notice of appeal within 180 days of administrative decision constituted a "claim-processing rule" and therefore was not jurisdictional). Indeed, "'[h]arsh consequences' attend the jurisdictional brand." *Davis*, 139 S. Ct. at 1849 (quoting *Kwai Fun Wong*, 135 S. Ct. at 1632). Therefore, a court must not conflate jurisdictional requirements and non-jurisdictional prerequisites to suit; only "a litigant's failure to comply with [a jurisdictional] bar deprives a court of all authority to hear a case." *Kwai Fun Wong*, 135 S. Ct. at 1631 (concluding that limitations under the Federal Torts Claims Act ("FTCA") is not jurisdictional).

To ascertain whether a statutory requirement is jurisdictional, the court must look to the statutory text. The Supreme Court has clarified: "'If the Legislature clearly states that a [prescription] count[s] as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue[;] [b]ut when Congress does not rank a [prescription] as jurisdictional, courts should treat the restriction as nonjurisdictional in character.'" *Davis*, 139 S. Ct. at 1850 (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006)) (alterations in *Davis*). Nevertheless, Congress need not "'incant magic words' to render a prescription jurisdictional." *Davis*, 139 S. Ct. at 1850 (quoting *Auburn*, 568 U.S. at 153).

To be sure, a claim processing rule may be "'mandatory' if it is properly raised." *Davis*, 139 S. Ct. at 1849 (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). But, unlike a jurisdictional issue, an objection may be waived or forfeited. *See Kontrick*, 540 U.S. at 456; *see also Davis*, 139 S. Ct. at 1849. Claim processing rules "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson*, 562 U.S. at 434.

In conducting the clear statement inquiry, the Supreme Court has turned to "traditional tools of statutory construction." *Kwai Fun Wong*, 135 S. Ct. at 1632. These tools include consideration of the procedural rule's "statutory text (if it speaks in 'jurisdictional terms'); the placement of the rule (if it is located in the jurisdiction-granting provision of the statute); and legislative context." *Stewart*, 912 F.3d at 700 (citing *Henderson*, 562 U.S. at 435). And, "the Supreme Court has clarified that most time bars are 'quintessential claim-processing rules,' which 'promote the orderly process of litigation by requiring that the parties take certain procedural steps at certain specified times.'" *Stewart*, 912 F.3d at 700 (quoting *Henderson*, 562 U.S. at 435).

Because the Court's analysis "turns on the statutory language and purpose of the exhaustion provision at issue," *Stewart*, 912 F.3d at 701, I turn to review the DCWPA.

### C.

Sections 827 and 828 of the NDAA were signed into law on January 2, 2013, and established a four-year pilot program to expand whistleblower protections for employees of all contractors and subcontractors of federal executive agencies. Pub. L. No. 112–239, 126 Stat. 1632 (2013). On December 14, 2016, Congress permanently extended the pilot program. Pub. L. No. 114–261, 130 Stat. 1362 (2016). Defendants, who maintain contracts with the federal government, are subject to Section 827 of the NDAA, codified at 10 U.S.C. § 2409.[5]

The Act "prohibits retaliation against employees of defense contractors who report certain types of misconduct." *United States ex rel. Cody v. ManTech Int'l, Corp.*, 746 F. App'x 166, 178

---

[5] Section 828 of the NDAA provides protections almost identical to Section 827 for all contractors and subcontractors, other than those working for the DoD, NASA, and the Coast Guard. *See* 41 U.S.C. § 4712; 48 C.F.R. 3.900; 48 C.F.R. 3.908–1. Section 828 prohibits a government contractor from discriminating against an employee "as a reprisal for disclosing . . . information that the employee reasonably believes is . . . a violation of law, rule, or regulations related to a Federal contract." 41 U.S.C. § 4712(a)(1).

(4th Cir. 2018) (citing 10 U.S.C. § 2409(a)(1)). Under the Act, "[a]n employee of a contractor [or] subcontractor . . . may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing . . . information that the employee reasonably believes is evidence of . . . [g]ross mismanagement," "gross waste of Department [of Defense] funds," "abuse of authority," or "a violation of law, rule, or regulation related to" a Department of Defense contract or grant. 10 U.S.C. § 2409(a)(1)(A), (B). Further, protection under the DCWPA covers disclosures to "[a] Member of Congress," "[a]n Inspector General," and "[a] management official or other employee of the contractor . . . who has a responsibility to investigate, discover, or address misconduct," among others. *Id.* § 2409(a)(2).

Of relevance here, an employee "who believes that [she] has been subjected to a reprisal . . . *may* submit a complaint to the *Inspector General of the Department of Defense*." *Id.* § 2409(b)(1) (emphasis added).[6] A complaint may not be filed "more than three years after the date on which the alleged reprisal took place." *Id.* § 2409(b)(4). Under 48 C.F.R. 203.904(3), the federal regulation implementing § 2409, a "complaint shall be signed" and contain:

(i) The name of the contractor;
(ii) The contract number, if known; if not, a description reasonably sufficient to identify the contract(s) involved;
(iii) The violation of law, rule, or regulation giving rise to the disclosure;
(iv) The nature of the disclosure giving rise to the discriminatory act, including the party to whom the information was disclosed; and
(v) The specific nature and date of the reprisal.

"Unless the Inspector General determines that the complaint is frivolous, the Inspector General shall investigate the complaint and submit a report of the findings of the investigation to

---

[6] The statute also permits an employee to file a complaint with "the Inspector General of the National Aeronautics and Space Administration in the case of a complaint regarding the National Aeronautics and Space Administration." *Id.* § 2409(b)(1).

12

the [complainant], the contractor concerned, and the head of the agency." 10 U.S.C. § 2409(b)(1). Here, the relevant "head of an agency" is the "Secretary of the Army." *Id.* § 2409(g)(2) (citing 10 U.S.C. § 2302(1)). The Inspector General is required to complete his investigation of the complaint "within 180 days after receiving the complaint," unless the complainant agrees to an extension of time, up to an additional 180 days. *Id*. § 2409(a)(2)(A). Within 30 days after receiving the Inspector General's report, "the head of the agency concerned" must issue an order denying or granting relief. *Id*. § 2409(c)(1).

Section 2409(c)(2) is also pertinent. It states: "If the head of an executive agency issues an order denying relief" or "has not issued an order within 210 days after the submission of a complaint . . . and there is no showing that such delay is due to the bad faith of the complainant, the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the contractor to seek compensatory damages and other relief . . . in the appropriate district court. . . ." Notably, the provision adds that the district court "shall have jurisdiction over such an action without regard to the amount in controversy." *Id.* However, the statute does not specify that a court lacks jurisdiction in the absence of exhaustion. The statute also says, *id*.: "An action under this paragraph may not be brought more than two years after the date on which remedies are deemed to have been exhausted."

As in *Davis*, the provision at issue here, 10 U.S.C. § 2409(c)(2), does not contain explicit jurisdictional language required to "tag" the provision as jurisdictional. *Davis*, 139 S. Ct. at 1849-50 (collecting cases concerning "an array of mandatory claim-processing rules and other preconditions to relief" that the Supreme Court has characterized as non-jurisdictional). *See Henderson*, 562 U.S. at 439; *see also Union Pacific R. Co. v. Brotherhood of Locomotive Eng'rs*

13

*and Trainmen Gen. Comm. of Adjustment, Central Region*, 558 U.S. 67, 81 (2009) ("Not all mandatory 'prescriptions, however emphatic, are . . . properly typed jurisdictional[.]'") (quoting *Arbaugh*, 546 U.S. at 510).

Here, an employee "may submit a complaint to the Inspector General of the Department of Defense." 10 U.S.C. § 2409(b)(1). If the head of an executive agency issues an order denying relief, or "has not issued an order within 210 days after the submission of a complaint . . . , the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the contractor" in the appropriate federal court, which shall have jurisdiction. 10 U.S.C. § 2409(c)(2). Thus, the provision requires a complainant "to wait a specified period before commencing a civil action," and speaks to "'a party's procedural obligations.'" *Davis*, 139 S. Ct. at 1851 (quoting *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489 (2014)). But, the filing requirement is "not a jurisdictional prescription delineating the adjudicatory authority of courts." *Davis*, 139 S. Ct. at 1851.

The case of *Quinn v. Booz Allen Hamilton, Inc.*, 3:14-CV-111-MCR-EMT, 2014 WL 12323684, at *2-4 (N.D. Fla. Dec. 2, 2014), supports this view. In *Quinn*, the defendant argued that the plaintiff's DCWPA claim "should be dismissed for lack of subject matter jurisdiction because [the plaintiff] failed to exhaust his statutory administrative remedies." *Id.* at * 2. The court observed that § 2409(c)(2) "does not contain the type of explicit statutory language required to make an administrative relief provision jurisdictional." *Id*. at *3. The court reasoned that the provision "does not explicitly state that no suit or judicial proceeding shall be maintained unless and until certain administrative prerequisites have been met. Rather, the statute provides that in the event a certain act occurs (e.g., in the event the head of an executive agency issues an order

14

denying relief), 'the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint.'" *Id*. (quoting 10 U.S.C. § 2409(c)(2)). Noting the absence of "prohibitive language," and "the lack of clear and unequivocal jurisdictional" text, 2014 WL 12323684, at * 3, the court declined to construe 10 U.S.C. § 2409 as jurisdictional. *Id.* at *4. Therefore, the court directed the parties to engage in limited discovery on the issue of whether the plaintiff complied with all conditions precedent to filing suit under § 2409. *Id*.[7]

Accordingly, I conclude that the exhaustion requirement under the DCWPA is non-jurisdictional.

### III. Conclusion

For the reasons set forth above, I shall deny the motion to dismiss under Rule 12(b)(1), as it is premised entirely on the claim that this Court lacks subject matter jurisdiction. As discussed, the exhaustion requirement is a non-jurisdictional prescription that speaks only to plaintiff's "'procedural's obligations,'" not the Court's power to hear the case. *Davis*, 139 S. Ct. at 1850 (quoting *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 512 (2014) (finding non-jurisdictional the Antiterrorism and Effective Death Penalty Act's requirement that a certificate of appealability "indicate [the] specific issue" warranting issuance of the certificate)). Any defect in the exhaustion does not give rise to a lack of jurisdiction.

---

[7] The case of *Grost v. United States*, EP-13-CV-158-KC, 2014 WL 1783947, at *13-14 (W.D. Tex. May 5, 2014), does not support a contrary conclusion. There, the defendant moved to dismiss the plaintiff's DCWPA claim pursuant to Rule 12(b)(6), for failure to state a claim. The court interpreted 10 U.S.C. § 2409(c)(2) as requiring a complainant to submit her complaint first to the Inspector General of the Department of Defense. *Id*. Because the plaintiff's complaint was sent to a member of Congress, the court dismissed for failure to exhaust administrative remedies. *Id*. However, the court did not expressly consider whether the plaintiff's failure to exhaust was a jurisdictional bar. *Id*.

Given the posture of the case, I cannot resolve at this juncture the merits of defendants' claim that Brown has failed to satisfy the exhaustion requirement under the DCWPA. *See Kwai Fun Wong*, 135 S. Ct. at 1638 (finding that the FTCA's time bar is non-jurisdictional and subject to equitable tolling).

An Order follows, consistent with this Memorandum Opinion.

Date: July 12, 2019

/s/
Ellen L. Hollander
United States District Judge